UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------

ANELIN PEREYRA,

              Plaintiff,

          -against-

JAMEL EADDY and MALIKAH
FLETCHER,

              Defendants.

---------------------------------

REPORT & RECOMMENDATION

13cv4760 (PAC) (MHD)

TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:


    Plaintiff Anelin Pereyra, currently an inmate in the New York State correctional system, commenced this pro se section 1983 lawsuit against two New York City corrections officers, Jamel Eaddy and Malikah Fletcher, based on events occurring while he was detained at one of the facilities of the New York City Department of Correction on Rikers Island. Plaintiff alleges, in substance, that Officer Fletcher assaulted him, causing physical and emotional injury, and that Officer Eaddy failed to intervene during Officer Fletcher's attack.


    At the conclusion of discovery, defendants have moved for summary judgment. In response, plaintiff concedes that Officer

Fletcher, who is a female, was not his assailant, but still resists dismissal of his claim against Officer Eaddy.

Concluding that there are genuine issues of material fact with regard to the claim against defendant Eaddy, but not with respect to defendant Fletcher, we recommend that defendants' motion be granted in part and denied in part.

## I. **Procedural Background**

On November 29, 2012, plaintiff commenced an earlier lawsuit addressing the incident that underlies his current lawsuit. In that pro se pleading, he named as defendants two John Doe correction officers from the George P. Vierno Center ("GPVC") at Rikers Island. (Pereya v. Superintendent, 12 cv 6123 (CS) ("6123")). (See Sohn Decl. Ex. A). According to plaintiff's complaint, on October 26, 2012 he encountered two officers in conversation and one of them -- described as "a visiting officer to '17A'" -- assaulted him, apparently because he had interrupted the two officers' conversation. He further alleged that the other officer -- described as the "officer on post" - "did nothing to correct the situation." (6123 Compl. ¶ II(D)). In that earlier suit, the District Court directed the City to identify the two John Doe officers who had been involved in the alleged incident

(Order of Service (citing <u>Valentin v. Dinkins</u>, 121 F.3d 72 (2d Cir. 1997))(6123 Doc. # 6), and by letter dated February 7, 2013, the Law Department identified Officers Fletcher and "Eddy" [<u>sic.</u>] as officers "who may have been involved in an incident involving plaintiff." (6123 Doc. # 12). The court subsequently dismissed that lawsuit without prejudice for failure to prosecute, because after the City had identified the two officers, plaintiff failed to amend his complaint to name them. (Sohn Decl. Ex. B)(6123 Doc. # 19).

Plaintiff filed the current lawsuit on July 9, 2013. Consistent with the City's prior <u>Valentin</u> response, he named Officers Fletcher and Eaddy as defendants.[1] In this complaint he again alleges that he was assaulted by a correction officer, and adds that in the course of the assault the officer wielded a four-inch switchblade knife, but that plaintiff "tried to protect myself from his attack." (4760 Compl. ¶ II(D)). He further alleges that, after the assault, he was seen by the facility medical staff and was then moved to another unit of the jail. (<u>Id.</u>). Although plaintiff does not repeat his allegation from the prior complaint that the second defendant officer failed to intervene, we read his <u>pro</u> <u>se</u> complaint, insofar as it includes Officer Eaddy as a defendant, as intended to replicate his

---

[1] Plaintiff's complaint spells Eaddy as "Eddy," which is consistent with the spelling found in the City's <u>Valentin</u> response in the first case.

allegations from the prior complaint. (<u>See</u> <u>also</u> Pltff's July 21, 2014 letter to the Court)(Doc. 29)(reiterating his earlier assertion that Officer Eaddy was present and failed to protect him from the assault.)[2]

Following the defendants' deposition of plaintiff, they filed the current summary-judgment motion on behalf of both defendants. Plaintiff has opposed the motion in part, principally by a letter sent to the court in anticipation of that motion. (<u>See</u> Pltff's July 21, 2014 letter to the Court). In his letter, plaintiff concedes that the identity of the officer who assaulted him is unknown but reiterates that Officer Eaddy failed to protect him. (<u>Id.</u> at 2-3).

## II. <u>Defendants' Motion</u>

In support of defendants' motion, they proffer the transcript of plaintiff's deposition testimony, as well as declarations by Officers Fletcher and Eaddy and some log entries.

---

[2] Defendants raise briefly the assertion that "[p]laintiff has not alleged failure to intervene as a separate cause of action in the complaint." (Def. Mot. 7). Defendants then style the failure-to-intervene action as a "derivative claim" and address it in their motion. (<u>Id.</u>). Defendants do not elaborate on their assertion that there is no stated claim against defendant Eaddy, but do develop arguments opposing this claim on other grounds. And in their reply, defendants do not object to plaintiff's assertion of the failure-to-intervene claim in his opposition -- the July 21, 2014 letter to the Court. We decline to address a position that was not briefed, and in any event read this <u>pro</u> <u>se</u> plaintiff's complaint and opposition papers as fully incorporating the allegations presented in his original complaint, which defendants attach to their motion.

Based on this evidentiary proffer, defendants press three principal arguments in favor of dismissal. They first assert that Officer Fletcher was not the officer who plaintiff claims assaulted him and that she was not even present at the scene during the alleged assault. (Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") 4). Second, they assert that it is undisputed that Officer Eaddy did not use any force against the plaintiff. (Id. at 6). Finally, they argue that because plaintiff's excessive-force claim against Officer Fletcher is demonstrably meritless, any potential derivative claim for failure to intervene -- presumably the claim against Officer Eaddy -- must also be dismissed. (Id. at 7-9).

    Plaintiff opposes defendants' motion in part, explaining that he has learned since filing his complaint that the assaulting officer is an unknown individual, and not the Officer Fletcher who was previously identified by the City and then named in his current complaint. (Plaintiff's July 21, 2014 letter to the court ("Pl. Opp'n"), Dkt. # 29, 1-2).[3] Plaintiff asserts that

---

[3] Treating the pro se plaintiff's filings liberally, we acknowledged plaintiff's July 21, 2014 letter in our order of July 29, 2014 as his anticipatory opposition to defendants' motion dated July 28, 2014. (Order, July 29, 2014, Doc. 27). See Lunney v. Brureton, 2007 WL 1544629, *6 (S.D.N.Y. May 29, 2007), objections overruled, 2007 WL 2050301 (S.D.N.Y. July 18, 2007)(forgiving pro se plaintiff's failure to follow local court rules since the court should act leniently with pro se plaintiffs).

the assault nonetheless occurred as described, and that defendant Eaddy witnessed a fellow officer use excessive force on plaintiff without acting to protect plaintiff. (<u>Id.</u> at 3). Plaintiff also asserts that in the wake of the incident, defendant Eaddy filed false reports in which he denied having witnessed the assault. (<u>Id.</u>).

In defendants' reply, they reassert their argument that both plaintiff's claim against Officer Fletcher for excessive force and his claim against Officer Eaddy for failure to protect him should be dismissed because Officer Fletcher does not match plaintiff's description of his assailant and plaintiff does not claim that Officer Eaddy used any force. (Def. Reply Mem. 4-5).

**III. <u>Evidence Presented</u>**

**A. Plaintiff's Deposition Testimony**

Plaintiff's deposition testimony elaborates substantially on the details of the attack as pled in his two complaints, but also includes the caveat that plaintiff suffers from a learning impairment and was challenged to remember details of an incident

that had occurred approximately twenty months before. (Dep. Tr. 7:2-25).[4] We briefly summarize the relevant testimony.

At the time of the alleged incident, Mr. Pereyra was being held in house 17A, cell 8 of the GRVC. (Dep. Tr. 18:14-15). He asserts that the incident occurred on October 26, 2012. (Id. at 18:23-25).

Mr. Pereyra reported that he was scheduled to have a video-conference with his lawyer that morning. He testified that a Corrections Officer named Tribble had summoned him for the video conference at about 9:00 a.m. (Id. at 19:6-9; 20:17-19; 21:1-10). According to plaintiff, when Officer Tribble summoned him, he was in the dayroom and defendant Eaddy was seated close-by in the bubble office, a short distance from Officer Tribble. (Id. at 24:15-22). Mr. Pereyra testified that Officer Eaddy was with another corrections officer, and that when he approached the two officers to ask Officer Eaddy to give him a pass to go to the video conference, the other officer told him not to interrupt their conversation. (Id. at 25:6-10). At his deposition, plaintiff identified the other officer with defendant Eaddy by the name "Fletcher" and described this officer as male, "a little

_____

[4] Plaintiff's deposition was conducted with the service of a Spanish-language interpreter and plaintiff testified that he is not able to read English. (Dep. Tr. 3:5-8; 59:6-7).

fat, like around 200-plus pounds. He's black and a little taller
than me. . . . Like 5'8" or something like that." (<u>Id.</u> at 25:12-
22). Plaintiff described Officer Eaddy as "dark complexion,
around 160 pounds and he doesn't look fat. He's kind of a thin
man. . . . 5'7', around 5'7." (<u>Id.</u> at 35:20-23).

According to plaintiff, he requested a pass at that time
from the seated officer (<u>id.</u> at 19:11-15; 22:20-23:5), whom he
identified as Officer Eaddy (<u>id.</u> at 23:25-24:2), and that Eaddy
refused to issue him the pass. (<u>Id.</u> at 27:17-21)(testifying that
officer said "I don't have to write my pass to you."). When
rebuffed by these two officers, he made no response other than to
leave his I.D. badge on the table next to the two officers, and
returned to the dayroom. (Dep. Tr. 26:4-17). Plaintiff recounted
that he then left the dayroom for the cell area to retrieve a
sweater. (<u>Id.</u> at 27:5-11). When he returned to the dayroom, he
learned from one of the other inmates, identified by plaintiff as
"Rodriguez," that the officer talking to Officer Eaddy (and
misnamed as Fletcher in this case) had thrown plaintiff's I.D. on
the floor. (<u>Id.</u> at 27:11-13, 23-25). Mr. Pereyra approached that
officer, and asked him why he had tossed plaintiff's ID. (<u>Id.</u> at
27:17-28:3).

8

At this point, according to plaintiff, the officer -- whom plaintiff had described as a 200-pound male -- became very rude and began to use "bad words," and, when asked again, "started to hit me." (Dep. Tr. 29:1-6). Plaintiff testified that defendant Eaddy was sitting nearby at the time of this assault and saw the incident but neither said nor did anything. (<u>Id.</u> at 29:7-8; 38:22-39:8). As described by plaintiff, the assaulting officer hit him in the face, and then kicked him in the back, causing him to fall down. (<u>Id.</u> at 24:5-9; 29:17-18, 33:13-22). Mr. Pereyra testified that when he hit the ground, his back made a sound as if a bone had been broken, and that he felt "unbearable pain in my bones" from the kick that leveled him. (<u>Id.</u> at 24:20-23). He reported, however, that the officer had not struck or kicked him again once he was on the floor. (<u>Id.</u> at 35:7-9).[5]

The timing of this assault and the sequence of other events was left unclear in plaintiff's testimony. Mr. Pereyra testified that the assault occurred at least 20 minutes after he had been summoned by Officer Tribble (Dep. Tr. 32:19-21) -- which would place the attack at about 9:20 a.m. -- but he conceded uncertainty as to whether the assault had occurred somewhat

---

[5] In plaintiff's complaint from the prior case, he alleged that the officer had "kicked me repeatedly." Def. Mot. Ex. A ¶ II (D).

later, possibly as much as 45 minutes or an hour later. (Id. at 32:9-23).[6]

According to plaintiff, he was beaten at least 20 minutes prior to his video conference with his lawyer, and his lawyer was made aware of the assault. (Id. at 33:2-10; 46:22-25). When asked how long after the assault he talked with his lawyer via video conference, plaintiff answered, "20 or 30 minutes after Ms. Tribble told me she's going to write me the pass." (Dep. Tr. 33:4-5). In that connection, plaintiff testified that some time after the assault and just prior to the video conference Officer Tribble had written the pass for him. (Id. at 43:13-15). No other evidence was presented to clarify the timing of events.

Plaintiff's deposition testimony also does not clarify the duration of the correction officer's attack. He first indicated that three to five minutes elapsed between the first punch and the kick. (Dep. Tr. 36:9-10; 36:12-15). However, upon further questioning about this lapse of time, plaintiff seemed to indicate that there was no time to react between the punch to the face and the kick that sent him to the ground. (Id. at 38:8-11). Mr. Pereyra said that the blow to his right temple left him "seeing stars", so that he could not react. (Id. at 38:13-20).

---

[6] At one point plaintiff estimated that the attack had taken place "[a]round 10:00 A.M." (Id. at 19:2).

After Mr. Pereyra was on the floor, some fellow inmates helped him stand up. (Dep. Tr. 39:19-21). According to plaintiff, once he was on his feet, the assaulting officer took out a small knife. (<u>Id.</u> at 39:23). The inmates had left Mr. Pereyra once he was standing; however, when they saw the officer pull out the knife, they returned to hold back Mr. Pereyra and prevent him from fighting with the officer. (<u>Id.</u> at 40:6-8, 17-21; 44:21-25). At this point the inmates helped Mr. Pereyra back to the dayroom, where he told them that he was unable to stand. (<u>Id.</u> at 43:2-8). Plaintiff testified that five or six fellow inmates had witnessed the assault, and he was able to identify one as "Rodriguez" in cell 30 and one other only by his cell number -- 13. (<u>Id.</u> at 31:6-32:8).[7]

After approximately 20 to 30 minutes (Dep. Tr. 33:2-10; 46:22-25), plaintiff obtained the pass from Officer Tribble to attend the video conference with his lawyer. (<u>Id.</u> at 43:9-15). He attended the video conference, but he left it early because of pain in his back and stomach. (<u>Id.</u> at 46:21-24). He subsequently went to the facility clinic, where he was given pain medication to treat his back and stomach, and his swollen eye. (<u>Id.</u> at 47:6-16). Beyond the pain in his back, plaintiff says that he still has pain in his stomach, making it difficult for him to eat. (<u>Id.</u>

_____

[7] In the prior complaint, plaintiff identified both inmate Rodriguez in cell 30 and inmate Maldano in cell 13. (Def. Mot. Ex. A ¶ II (D)).

11

at 49:1-12). In addition to the physical injuries sustained, plaintiff reports that he continues to have nightmares about the incident and experiences nervousness upon seeing any corrections officer. (Id. at 49:20-25, 50:1-16).

On the date of the incident, the plaintiff completed a voluntary statement with the assistance of the captain at GRVC, because the plaintiff cannot write in English. (Dep. Tr. 59:1-7). The statement said that the plaintiff was "attacked in the GRVC, that [the officer] hit me in my face, that he kicked me and I fell to the ground and that after he pulled out and showed me a small knife, four inches." (Id. at. 59:11-15).

### B. Defendants' Declarations

Defendant Fletcher supplied a declaration in which she reports that she was assigned to building 17, B side of the GRVC, from 7:00 a.m. to 3:31 p.m. on October 26, 2012. (Def. Mt., Decl. of Officer Malikah Fletcher ("Fletcher Decl.") ¶ 2). She further declares that she was unable to see the A side at all during the time of the alleged incident. (Id. at ¶ 4). She describes herself as an African-American female, who weighed 175 pounds at the time and is 5'6". (Id. at ¶ 6).

Defendant Eaddy, in his declaration of July 17, 2014, states that he was on duty in building 17, A side, from 7:00 a.m. to 3:00 p.m. on October 26, 2012. (Def. Mot., Decl. of Officer Jamel Eaddy ("Eaddy Decl.") ¶ 2). He declares, based on a review of the facility logbook, that he started on duty at 8:45 a.m. that day and that at 10:00 a.m. he conducted a tour of the housing area and made an announcement for the law library. (Id. at ¶ 3). He further states that a new inmate arrived at 10:05 a.m., at which point he would have searched the new arrival, and that the admission of the new inmate would have taken ten minutes. (Id. at ¶ 5). He goes on to recite that the logbook indicates that at 10:30 a.m. he made another tour "of the area", and engaged in similar tours at various later times of the morning. He further asserts that he has no "independent recollection" of plaintiff requesting a pass that day and denies having witnessed any correction officer use force against any inmate that day. (Id. at ¶ 8). He describes himself as an African-American male, who weighed about 165 pounds at that time and is 5'6". (Id. at ¶ 9). Defendants also provide pages from the facility log for October 26, 2012, supporting Mr. Eaddy's declaration that he was otherwise engaged with a library announcement at 10:00 a.m., with a new inmate arrival 10:05 a.m., and with various other duties earlier and later on. (Def. Mot, Ex. F).

13

## ANALYSIS

### I. Summary Judgment Standards

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Virgin Atl. Airways Ltd. v. British Airways PLC, 257 F.3d 256, 262 (2d Cir. 2001). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Shade v. Hous. Auth. Of New Haven, 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986)(citing Anderson, 477 U.S. at 255).

14

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. Celotex, 477 U.S. at 322-23; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003)(citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

The court must view all evidence in the light most favorable to the non-moving party, Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in

15

favor of the party against whom summary judgment is sought." Sec.
Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d
77, 83 (2d Cir. 2004). "[A]ll doubts as to the existence of a
genuine issue for trial should be resolved against the moving
party," Brady v. Town of Colchester, 863 F.2d 205, 210 (2d Cir.
1988) (citing Celotex, 477 U.S. at 330 n.2), but "[o]nly disputes
over facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment[;] [f]actual disputes that are irrelevant or unnecessary
will not be counted." Anderson, 447 U.S. at 248.

If the moving party carries his initial burden, the opposing
party must then shoulder the burden of demonstrating a genuine
issue of material fact on any such challenged element of his
claim. Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d
681, 683 (2d Cir. 2001). In doing so, the opposing party cannot
rest "merely on allegations or denials" of the factual assertions
of the movant, Fed. R. Civ. P. 56(e); Goldstein v. Hutton,
Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60
(2d Cir. 2004), nor can he rely on his pleadings or on merely
conclusory factual allegations. Weinstock v. Columbia Univ., 224
F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply
show that there is some metaphysical doubt as to the material
facts." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir.

2005)(quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. <u>Id.</u> (quoting Fed. R. Civ. P. 56(e); citing <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998)).

**B. Assessment of Defendants' Motion**

**1. Standards for Claims of Excessive Force**

Section 1983 imposes liability on individuals acting under the color of state law who deprive another person of "any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; <u>see</u> <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996). Claims of excessive force by prisoners are evaluated pursuant to standards developed under the Eighth Amendment, which prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, including the "unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976). "The test of whether use of force in prison constitutes excessive force contrary to the Eighth Amendment is whether the force was used in a good-faith attempt to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Scott v. Coughlin</u>, 344 F.3d 282, 291

(2d Cir. 2003)(citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)). To establish an Eighth Amendment violation based on the use of excessive force, a prisoner must prove "(1) a subjective component which focuses on the defendant's motive for his conduct and (2) an objective component which focuses on the conduct's effect." Jeanty v. County of Orange, 379 F. Supp.2d 533, 540 (S.D.N.Y. 2005)(citing Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000)).

The subjective component looks to the defendant's "motive" and requires the court to determine "whether the defendant 'had the necessary culpability, shown by actions characterized by "wantonness" in light of the particular circumstances surrounding the challenged conduct.'" Jones v. Diaz, 2011 WL 1202024, *3 (S.D.N.Y. March 23, 2011)(quoting Sims, 230 F.3d at 21). The objective consideration looks to whether the amount of force used "is sufficiently . . . serious or harmful enough," judged by "contemporary standards of decency." United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999)(citing Hudson, 503 U.S. at 8). This element is met even when the plaintiff has not suffered a serious injury. Davidson v. Flynn, 32 F.3d 27, 29 & n.1 (2d Cir. 1994)(citing Hudson, 503 U.S. at 9). Moreover, even de minimis uses of force will suffice if the conduct was "repugnant to the

18

conscience of mankind". <u>Walsh</u>, 194 F.3d at 50 (citing <u>Hudson</u>, 503 U.S. at 10).[8]


As a corollary to a prisoner's right not to be subjected to excessive force by his guardians, he is also entitled to be protected from assaults, whether by corrections officers or fellow inmates. <u>See</u>, <u>e.g.</u>, <u>Hayes v. New York City Dep't of Corrections</u>, 84 F.3d 614, 620 (2d Cir. 1996). Moreover, and more generally, "[a] law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir.1988); <u>accord Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."); <u>see</u> <u>also</u> <u>Bancroft v. City of Mount Vernon</u>, 672 F. Supp. 2d 931, 406 (S.D.N.Y. 2009)("Officers who are present when constitutional torts are being committed have a

---

[8] On the current record it is unclear whether plaintiff was a convicted prisoner or a pre-trial detainee at the time of the incident in question. If he was still a pre-trial detainee, the pertinent constitutional protection was afforded by the Due Process Clause of the Fourteenth Amendment rather than by the Eighth Amendment. <u>See</u>, <u>e.g.</u>, <u>Toliver v. City of New York</u>, 530 F. Appx. 90, 92 n.1 (2d Cir. July 24, 2013); <u>Johnson v. Maha</u>, 606 F.3d 39, 41 (2d Cir. 2010); <u>Caiozzo v. Koreman</u>, 606 F.3d 63, 69 (2d Cir. 2009). Nonetheless, the substantive standards for excessive-force claims are the same under both provisions. <u>See</u>, <u>e.g.</u>, <u>Walsh</u>, 194 F.3d at 47-48; <u>Tavares v. City of New York</u>, 2011 WL 587548, *3 (S.D.N.Y. Nov. 23, 2011)(citing <u>Mayo v. County of Albany</u>, 357 F. App'x 339, 341 (2d Cir. 2009)).

duty to intervene and stop the unconstitutional conduct if they have a reasonable opportunity to do so."). "An officer who fails to intercede is liable for the preventable harm. . . ." Anderson, 17 F.3d at 557 (citing O'Neill, 839 F.2d at 11-12). Accord, e.g., Alvarez v. City of New York, 2015 WL 1499161, *8 (S.D.N.Y. March 30, 2015). This principle is applicable to prison personnel, as it is to police officers. See, e.g., McCoy v. Goord, 255 F. Supp. 2d 233, 261-62 (S.D.N.Y. 2003).

To succeed on a claim for failure to intercede, the plaintiff must demonstrate that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008)(citing O'Neill, 839 F.2d at 11-12). Generally, the question of whether intervention was feasible is one for the jury. Anderson, 17 F.3d at 557 (citing O'Neill, 839 F.2d at 11).

## 2. The Claim Against Officer Fletcher

We may readily dispose of plaintiff's claim against Officer Fletcher. Mr. Pereyra describes the officer who assaulted him as a black, male correction officer, approximately five-feet, eight inches in height and weighing over 200 pounds. (Dep. Tr. 25:11-22, 29:3-25). There is no dispute, however, that Officer Fletcher, badge number 18322, is in fact an African American female correction officer and is approximately five-feet, six-inches in height. (Fletcher Decl. ¶ 6). In plaintiff's response to the motion, he does not dispute the accuracy of Officer Fletcher's self-description, and concedes that he now realizes that the officer who allegedly assaulted him is an unknown individual, and not the "Officer Fletcher" named in his complaint. (Pl. Opp'n 1-2).

Given this record, it is apparent that the City's <u>Valentin</u> response in plaintiff's earlier case -- in which it identified this officer as possibly linked to the alleged incident -- was in error. Necessarily, then, plaintiff's identification of her as the assaulting officer was equally erroneous, and hence summary judgment must be granted to Officer Fletcher.

### 3. The Claim Against Officer Eaddy

In seeking dismissal of the section 1983 claim against Officer Eaddy, defendants proffer a series of arguments that are uniformly unpersuasive.

Principally they argue that, because Officer Eaddy is not accused of using any force against plaintiff and because plaintiff's claim of excessive force against Officer Fletcher cannot survive, plaintiff is unable to press a "derivative claim" of non-intervention against Officer Eaddy.[9] The apparent premise for this argument is that, in the current circumstances, plaintiff cannot demonstrate that he was assaulted, and, perforce, he cannot complain that Eaddy failed to intervene to stop such an assault.

---

[9] Defendant applies the term "derivative claims" to describe plaintiff's claim against defendant Eaddy (Def. Mot. 7), and we assume that this terminology is intended to suggest that the claim against defendant Eaddy is dependent on the claim against defendant Fletcher. We note that defendants assert, without further briefing, that plaintiff failed to state a cause of action against defendant Eaddy, (id.), but otherwise have acknowledged the failure-to-intervene allegations against him through briefing the matter in their motion papers and incorporating plaintiff's prior complaint -- in which he does explicitly raise that cause of action -- in their motion papers.

We have not found this term used in the context to which defendants seek to apply it. A derivative action, which we take to be a synonym for "derivative claim," is "[a] lawsuit arising from an injury to another person, such as a husband's action for loss of consortium arising from an injury to his wife caused by a third person." See "Derivative Action," Black's Law Dictionary (10th ed. 2014). Such a term is not applicable to the current matter because plaintiff is not alleging an injury derived from a claim made by another person; rather, he alleges that defendant Eaddy independently violated his rights by breaching his duty "to intervene to stop" the use of excessive force. See, e.g., Jean-Laurent, 540 F. Supp. 2d at 513.

This reasoning is seriously misguided. Although the claim against Officer Fletcher must fail, that result is attributable to plaintiff's conceded misidentification of the officer who allegedly assaulted him,[10] and not because he fails to proffer evidence of an assault by another officer. Indeed, plaintiff testified that a male officer, whom he described in some detail, had in fact punched and kicked him without provocation, causing him considerable pain and other discomfort in the process, and that Officer Eaddy had sat by without intervening.

Plaintiff's testimony -- if credited, as we must on this motion -- suffices to permit a trier of fact to find that an unidentified correction officer attacked plaintiff and did so maliciously and with the intent to cause harm and that this assault constituted a violation of Mr. Peryra's Eighth Amendment rights. The unprovoked nature of the attack obviously satisfies the subjective component of the applicable test. <u>See</u>, <u>e.g.</u>, <u>Walsh</u>, 194 F.3d at 50; <u>D'Attore v. New York City Dep't of Correction</u>, 2012 WL 4493977, *14-15 (S.D.N.Y. Sep't 27, 2012). As for the objective component of a constitutional excessive-force claim, it requires that the use of force and its impact be '"sufficiently serious' by objective standards." <u>Jeanty</u>, 379 F.

---

[10] We reiterate that the plaintiff's error in identification was plainly attributable to the City's <u>Valentin</u> response, which identified Officer Fletcher as having apparently been involved in the incident. We further note that the <u>Valentin</u> response did not identify Fletcher as a female.

23

Supp. 2d at 540 (quoting <u>Griffin v. Crippen</u>, 193 F.3d 89, 91 (2d
Cir. 1999)). Although "'<u>de</u> <u>minimis</u> uses of physical force,
provided that the use of force is not of a sort repugnant to the
conscience of mankind'" are not actionable as a violation of the
Eighth Amendment, a showing of extreme injury is not required to
bring an excessive force claim, if the alleged conduct involved
"'unnecessary and wanton infliction of pain.'" <u>Sims</u>, 230 F.3d 14,
21-22 (quoting <u>Hudson</u>, 503 U.S. at 10).


    Plaintiff's testimony plainly meets this standard for
summary-judgment purposes. He reported that he suffered severe
pain immediately following the attack, and indeed was unable to
stand up for some time. He also reported having suffered
lingering pain in his stomach and back as well as a swollen right
eye as a result of the incident; he further claimed to suffer
from continuing nightmares. (Dep. Tr. 47:3-16, 49:20-24).


    The implicit premise for defendants' argument on this point
seems to be that if the plaintiff cannot identify and sue the
assailant officer, he cannot pursue a claim for non-intervention
against an identified officer. This argument is baseless. The
legal authority that defendants proffer in support of their
stance is not on point, and their underlying theory is devoid of
any logical underpinning.

Defendants cite caselaw for the proposition that a plaintiff's section 1983 claim against corrections officers cannot stand if the officers have not been identified. (Reply 3)(citing, inter alia, Rasmussen v. City of N.Y., 766 F. Supp. 2d 399, 411 (E.D.N.Y. 2011)("I cannot enter judgment against 'an officer in a baseball hat.'")). That caselaw in unavailing here, because plaintiff has clearly identified Officer Eaddy and his alleged violation of plaintiff's rights.

The failure to intervene is an independent violation of a duty owed by a corrections officer to an inmate, even if it depends on proof that another officer applied the excessive force. See, e.g., O'Neill, 839 F.2d at 11; Jean-Laurent, 540 F. Supp. 2d at 512.[11] If plaintiff can demonstrate to the satisfaction of a trier of fact that a law-enforcement officer

---

[11] A consideration of the reasoning applied to cases involving Monell liability further demonstrates defendants' logical lapse. When establishing municipal liability, a "plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality" for its promulgation of an unconstitutional policy or pattern of practice, to which the individual tortfeasors were adhering. Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013)(citing cases from the 1st and 5th circuits). As long as the plaintiff has "properly pleaded and proved" the elements of the section 1983 claim, "the fact that the suit against the [individual] actors was untimely, or that the plaintiff settled with them, or abandoned the suit against them, is irrelevant to the liability of the municipality." Id. at 254. Of course, the plaintiff's claims against the municipality would fail if a judgment in favor of the individual defendants "resulted from the plaintiff's failure to show they committed the alleged tort." Id. at 253-54. Similarly, if a constitutional violation has been properly pleaded and supported by competent evidence -- here, that defendant Eaddy failed to intervene when he reasonably could have prevented an assault on plaintiff in violation of the Eighth Amendment -- that claim would only be subject to dismissal if it were determined that the assault had not occurred, not because the assaulting officer had been incorrectly identified.

assaulted him in violation of his constitutional rights, there is no justification for depriving him of the opportunity to demonstrate that an identified officer was guilty of facilitating that violation through inaction.

Indeed, the perversity of defendants' argued-for outcome is particularly acute in this case; under <u>Valentin</u> the City was required to identify the John Doe officers referred to in plaintiff's prior complaint, and it erroneously specified Officer Fletcher as one of the two. In effect, then, the City argues that its own error in this regard can be leveraged into a basis for protecting Officer Eaddy from liability that, but for this error, might be imposed on him. The absurdity of this proposition is self-evident.[12]

In another effort to undercut plaintiff's assertion at his deposition that he was attacked by a male officer whom he mistakenly assumed was named Fletcher, defendants offer the argument that plaintiff's current assertion that he was assaulted

---

[12] The flaw in defendants' argument is underlined by the quotations they offer from several of their cited cases. (<u>See</u> Defts. Mem. 7-8: "There can be no failure to intervene [] where there was no constitutional violation," <u>Tavares v. City of New York</u>, 2011 WL 5877550, *7 (S.D.N.Y. Oct. 17, 2011); "Because there was no constitutional violation, plaintiff's section 1983 claim must be summarily dismissed on the merits," <u>Coleman v. City of New York</u>, 2010 WL 571986, *5 (S.D.N.Y. Feb. 2. 2010). In this case plaintiff has proffered sufficient evidence that he did suffer from a constitutional violation in the form of an unprovoked assault, even if it was attributable to an officer whom neither he nor the City has correctly identified.

by an unidentified officer is barred by a line of caselaw holding that a party may not defeat summary judgment by proffering an affidavit that directly conflicts with his prior deposition testimony. (Defts' Mem. 8-9)(quoting inter alia Hale v. Mann, 219 F.3d 61, 74 (2d Cir. 2000); Hayes, 84 F.3d at 619. In substance, defendants argue that plaintiff's opposition to their motion should be precluded because he recites that his assailant was an unknown male officer, whereas at his deposition he referred to the attacker as a male officer named Fletcher.

This argument is frivolous. The concern of the cited cases is that the party opposing summary judgement "may not submit an affidavit contradicting his prior deposition testimony with the purpose of manufacturing an issue of material fact and thereby defeating summary judgement." Kennedy v. City of New York, 2013 WL 3490351, *2 (E.D.N.Y. July 10, 2013)(citing Perma Research & Dev. Co. V. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969)). Consistent with that concern, the Second Circuit has made clear that this limitation apples only to direct contradictions in material testimony. See, e.g., Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 725-26 (2d Cir. 2010). See also D'Attore, 2012 WL 4493977 at *10.

The plaintiff's reference in his opposition letter to an unknown officer assaulting him does not reflect a material contradiction of prior testimony, and plainly does not represent a change of position intended to defeat summary judgment. At plaintiff's deposition he testified that a male officer, whom he described in detail, had assaulted him. In his opposition to defendants' motion, he adheres to exactly the same account. The only alteration is that he now says that he does not know the name of the officer, in contrast to his testimony at the deposition that the officer was named Fletcher. This is not a direct contradiction of material testimony, and indeed the change is attributable to the fact that the Law Department had previously, and erroneously, advised plaintiff that one of the officers was named Fletcher and had a specific badge number, and plaintiff plainly only learned of the error upon receipt of Officer Fletcher's declaration. In short, there is no basis to preclude plaintiff from confirming -- as defendants assert -- that the female Officer Fletcher was not the correction officer who plaintiff observed conversing with Officer Eaddy and who than assaulted plaintiff.

As for Officer Eaddy's potential exposure, defendant asserts that plaintiff cannot demonstrate that the officer used force against him and that plaintiff does not accuse Officer Eaddy of

using any force against him. (Def. Mem. 6-7). While this is true, it does not undercut plaintiff's claim against defendant Eaddy. Plaintiff makes no assertion that Officer Eaddy used force and even acknowledges that Officer Eaddy never touched him on the day in question.[13] Rather, plaintiff's claim against defendant Eaddy is that he failed to intervene to protect plaintiff from the violation of his constitutional rights by another officer.

As already discussed, there is sufficient evidence in the record that plaintiff suffered from excessive force, in violation of his constitutional rights. In addition, plaintiff identified Officer Eaddy as a passive bystander to that assault. As for whether Eaddy had a realistic opportunity to intervene and prevent harm, defendants' motion does not challenge plaintiff's claim on that basis. See, e.g., Alvarez, 2015 WL 1299161 at *9.[14]

---

[13] Plaintiff stated during his deposition that Officer Eaddy did not kick him, did not use any force against him, and did not touch or contact him physically during the incident. (Dep. Tr. 35:10-18). In Officer Eaddy's declaration, he states that he did not make any physical contact with the plaintiff on October 26, 2012. (Eaddy Decl. ¶ 7).

[14] Even if defendants had pursued such an argument, it would likely fail in view of plaintiff's admittedly confused deposition testimony, in which -- at one point -- he estimated that the assault had lasted three to five minutes. Although at another point he seemed to say that it ended more quickly, on summary judgment we must read ambiguities in the evidence in favor of the party opposing summary judgment. See, e.g., Sec. Ins. Co. of Hartford, 391 F.3d at 83. In addition, we note further testimony by plaintiff that after the attack ended, the assailant officer took out a knife and apparently threatened him again, and that he was rescued from this situation only by fellow inmates. (Dep. Tr. 40:6-8, 17-21 & 44:21-25). This testimony too can be read to suggest that Officer Eaddy had sufficient opportunity to intervene and failed to do so.

Thus, the record suffices to support the claim against Officer Eaddy.

In resisting this conclusion, defendants seek to demonstrate that Eaddy could not have been present at the time of the alleged assault on plaintiff. Thus they proffer Officer Eaddy's log records and his declaration indicating that he was on duty in the vicinity in the cell area where the alleged assault took place, but that he was not at the location of the attack at exactly 10:00 a.m. or for certain periods later on. (Eaddy Decl. ¶¶ 3, 5; Def. Motion, Ex. F). Thus, defendant Eaddy states that he made an announcement in the library at 10:00 a.m. and that he was handling the arrival of a new inmate at 10:05 a.m. (Eaddy Decl. ¶¶ 3, 5).

This argument fails for two reasons. First, even if it were conclusively established that the attack occurred at 10:00 a.m., the proffer by defendants as to Eaddy's location would simply go to the credibility of plaintiff's testimony about that officer's role, and such credibility issues are for the trier of fact to resolve, not for the court to adjudicate on a summary-judgment motion. In short, the defendants' proffer would define a triable dispute rather than resolve it.[15]

---

[15] If defendants were seeking to imply that plaintiff's narrative is too implausible to survive Rule 56 scrutiny, that assertion would plainly fail. See generally D'Attore, 2012 WL 4493977 at *8-10 (discussing inter alia Jeffrey v. City of New York, 426 F.3d 549 (2d Cir. 2005)).

Second, in any event, the plaintiff's testimony does not definitively place the incident at precisely 10:00 a.m. Indeed, his testimony reflected considerable uncertainty as to exactly when the assault occurred. Thus, at one point he estimated that the attack had taken place "around 10:00 a.m." (Dep. Tr. 19:2), and at another point he recalled that it had occurred at least twenty minutes after he had been summoned by Officer Tribble for his video conference, an event that he recalled taking place at about 9:00 a.m. (Dep. Tr. 32:19-23). Finally, at still another point he indicated that the assault had occurred twenty or thirty minutes before the conference (id. at 33:4-5), but there is no evidence in the record as to the time of plaintiff's video conference with his attorney -- information that would most likely be in the control of the defendants.

Given this record, a trier of fact could find that the assault -- if it occurred -- took place between 9:20 (or even earlier) and some time after 10:00 a.m. As for Eaddy's log entries between 9:20 a.m. and 10:00 a.m., they only mention tours of the area at 9:30 a.m. and 9:45 a.m. -- with no indication as to how much time a "tour" required -- and references to his whereabouts at 10:00 a.m. and 10:15 a.m.[16] This proffer and Eaddy's own reference to his activities starting at 10:00 a.m. do

---

[16] This timing would rest on Eaddy's assertion that the intake of a new inmate at 10:15 a.m. took ten minutes.

not conclusively disprove plaintiff's testimony that defendant Eaddy was present for, witnessed and failed to intervene in the assault.[17]

In sum, there remain triable issues of fact that are material to plaintiff's claim against defendant Eaddy.

**CONCLUSION**

For the reasons stated, we recommend that defendants' motion for summary judgment be granted with respect to defendant Fletcher and denied with respect to defendant Eaddy.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Paul A. Crotty, Room 1350, 500 Pearl

---

[17] Additionally, defendant Eaddy describes himself as "an African-American male" who "weighed about 165 pounds and was 5 feet, 6 inches tall" on October 26, 2012. (Eaddy Decl. ¶ 9). In plaintiff's deposition, taken more than one month prior to Officer Eaddy's declaration, he described Officer Eaddy in very similar terms: "He's a dark complexion, around 160 pounds and he doesn't look fat. He's kind of a thin man . . . 5'7, around 5'7"." (Dep. Tr. 35:20-23). The congruence between these two descriptions would also provide some support for plaintiff's assertion that the passive correction officer at the time of the assault was Officer Eaddy.

Street, New York, New York, 10007-1312, and to the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections, both in the District Court and on later appeal to the United States Court of Appeals. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. Pro. 72, 6(a), 6(e); Thomas v.. Arn, 474 U.S. 140 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v. Sec'v. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

**DATED: New York, New York**
        **May 13, 2015**


                                        **RESPECTFULLY SUBMITTED,**


                                        _____
                                        **MICHAEL H. DOLINGER**
                                        **UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been sent this date to:

Mr. Anelin Pereyra
13A2456
Gowanda Correctional Facility
P.O. Box 350
Gowanda, NY 14070-0350


Lisa Sohn, Esq.
Assistant Corporation Counsel for the City of New York
100 Church Street
New York, NY 10007